UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ELIZABETH E. DIAZ,          )    NO.   CV 08-705-CT
                            )
        Plaintiff,          )    OPINION AND ORDER
                            )
        v.                  )
                            )
MICHAEL J. ASTRUE,          )
Commissioner of             )
Social Security,            )
                            )
                            )
        Defendant.          )
                            )
_____)

     For the reasons set forth below, it is ordered that judgment be entered in favor of defendant Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.


                    SUMMARY OF PROCEEDINGS

     On February 11, 2008, Elizabeth E. Diaz ("plaintiff") filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act").   The parties filed a consent to proceed before the magistrate judge.   On June

18, 2008, plaintiff filed a brief with points and authorities in support of her complaint.  On July 16, 2008, the Commissioner filed a responsive brief.

SUMMARY OF ADMINISTRATIVE RECORD

1.  Proceedings

On August 23, 2005, plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability since January 12, 2002 due to depression, a learning disability, and being hard of hearing.  (TR 59-65, 71).[1]  The application was denied initially and upon reconsideration.

On February 27, 2006, plaintiff filed a request for a hearing before an administrative law judge ("ALJ").  (Id. 41).  On May 2 and October 1, 2007, plaintiff, represented by an attorney, appeared and testified before an ALJ.  (Id. 297-387).  The ALJ also considered vocational expert ("VE") and medical expert ("ME") testimony.  On November 11, 2007, the ALJ issued a decision in which he found that plaintiff was not disabled, as defined by the Act, and thus was not eligible for benefits.  (Id. 11-18).  On November 26, 2007, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision.  (Id. 7).  On December 15, 2007, the request was denied.  (Id. 4-6).  Accordingly, the ALJ's decision stands as the final decision of the Commissioner.  Plaintiff subsequently sought judicial review in this court.

///

---

[1] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

1        2.   <u>Summary Of The Evidence</u>

2     The ALJ's decision is attached as an exhibit to this opinion and

3 order and materially summarizes the evidence in the case.

4                          <u>PLAINTIFF'S CONTENTIONS</u>

5     Plaintiff contends as follows:

6 1.   The ALJ failed to properly consider a treating psychiatrist's

7      mental status evaluation;

8 2.   The ALJ misrepresented and failed to properly consider a statement

9      by a lay witness; and

10 3.   The ALJ failed to pose a complete hypothetical question to the

11      vocational expert.

12                          <u>STANDARD OF REVIEW</u>

13     Under 42 U.S.C. § 405(g), this court reviews the Commissioner's

14 decision to determine if: (1) the Commissioner's findings are supported

15 by substantial evidence; and, (2) the Commissioner used proper legal

16 standards.  <u>Macri v. Chater</u>, 93 F.3d 540, 543 (9th Cir. 1996).

17 Substantial evidence means "more than a mere scintilla," <u>Richardson v.</u>

18 <u>Perales</u>, 402 U.S. 389, 401 (1971), but less than a preponderance.

19 <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).

20     When the evidence can reasonably support either affirming or

21 reversing the Commissioner's conclusion, however, the Court may not

22 substitute its judgment for that of the Commissioner.  <u>Flaten v.</u>

23 <u>Secretary of Health and Human Services</u>, 44 F.3d 1453, 1457 (9th Cir.

24 1995).

25 ///

26 ///

27 ///

28                                     3

DISCUSSION

1. <u>The Sequential Evaluation</u>

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.  First, it is determined whether the person is engaged in "substantial gainful activity."  If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments.  If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work.  If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.  The person is entitled to benefits only if the

1 person is unable to perform other work.   20 C.F.R. § 416.920; Bowen v.

2 Yuckert, 482 U.S. 137, 140-42 (1987).

3     2.   Issues

4     A.   Treating Psychologist (Issue #1)

5     Plaintiff asserts that the ALJ failed to give proper weight to the

6 opinion of one of plaintiff's treating psychologists.   In particular,

7 plaintiff faults the ALJ for failing to consider the findings set forth

8 in a June 12, 2007 psychiatric medical evaluation, which was filled out

9 by an unknown treating psychologist.   According to plaintiff, those

10 findings establish that her mental impairment renders her incapable of

11 performing substantial gainful activity.   Although plaintiff is unable

12 to identify the name of the treating psychologist in question, the

13 record reflects that the treating psychologist was employed with Pacific

14 Clinics, where plaintiff received mental health services in 2007.[2]   As

15 explained below, the ALJ committed no error in considering the

16 psychiatric medical evaluation.

17     A treating physician's opinion generally is entitled to great

18 weight.   See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)

19 (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)); Sprague

20 v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). "The treating physician's

21 opinion is not, however, necessarily conclusive as to either a physical

22 condition or the ultimate issue of disability." Andrews, 53 F.3d at

23 1041 (citing Magallanes, 881 F.2d at 751).   The weight given a treating

24 physician's opinion depends on whether the opinion is supported by

25 _____

26     [2] Based on the information contained in the June 12, 2007

27 psychiatric medical evaluation, it appears that the treating
psychiatrist was Elsa Cruz, M.D.   (TR 224).

28

1 │ sufficient medical data and is consistent with other evidence in the

2 │ record.  See 20 C.F.R. § 404.1527.

3 │     "The ALJ may disregard the treating physician's opinion whether or

4 │ not that opinion is contradicted." Andrews, 53 F.3d at 1041 (citing

5 │ Magallanes, 881 F.2d at 751).  A medical opinion is considered

6 │ uncontroverted if all the underlying medical findings in the record of

7 │ plaintiff's physical impairments are similar.  Sprague, 812 F.2d at

8 │ 1230.  To reject the uncontroverted opinion of plaintiff's physician,

9 │ the ALJ must present clear and convincing reasons for doing so.

10 │ Andrews, 53 F.3d at 1041 (citing Magallanes, 881 F.2d at 751).

11 │     If, on the other hand, the treating physician's opinion is

12 │ contradicted by other doctors, the ALJ may not reject the opinion

13 │ without providing "specific and legitimate reasons" supported by

14 │ substantial evidence for doing so.  Rollins v. Massanari, 261 F.3d 853,

15 │ 856 (9th Cir. 2001) (citing Reddick v. Chater, 157 F.3d 715 (9th Cir.

16 │ 1998)); see also Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir.

17 │ 2001).  Furthermore, "where the opinion of the claimant's treating

18 │ physician is contradicted, and the opinion of a nontreating source is

19 │ based on independent clinical findings that differ from those of the

20 │ treating physician, the opinion may itself be substantial evidence; it

21 │ is then solely the province of the ALJ to resolve the conflict."

22 │ Andrews, 53 F.3d at 1041.

23 │     Here, the ALJ properly considered and rejected the findings set

24 │ forth in the June 12, 2007 psychiatric medical evaluation ("the

25 │ evaluation").  First, although plaintiff suggests that the ALJ failed to

26 │ consider the evaluation, the ALJ specifically addressed it in his

27 │ decision.  (TR 15) (noting that plaintiff was receiving mental health

28 │

services at Pacific Clinics in June 2007); see also (id. 378-79)
(medical expert at hearing testifying about findings from the June 12,
2007 evaluation).   In doing so, the ALJ referred to the low Global
Assessment of Functioning ("GAF") scores that were assessed for
plaintiff at Pacific Clinics.  (Id.).

    Second, the ALJ found that the evaluations from Pacific Clinics
were not entitled to substantial weight because they were not based on
objective findings, but instead based only on plaintiff's discredited
self-reporting.  (See TR 17).  The Ninth Circuit permits an ALJ to rely
on an absence of objective findings to reject a treating physician's
opinion.   Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)
(inadequate clinical findings provide specific and legitimate basis for
ALJ to reject treating physician's opinion); Buckhart v. Bowen, 856 F.2d
1335, 1339 (9th Cir. 1988) (proper to disregard uncontroverted treating
physician's opinion when he fails to provide objective descriptions of
medical findings).

    Moreover, in this case, the lack of objective findings was
particularly important because the ALJ had already found that plaintiff
lacked credibility.[3]   See Andrews, 53 F.3d at 1042 ("[A]n opinion of
disability premised to a large extent upon the claimant's own accounts
of his symptoms and limitations may be disregarded, once those
complaints have themselves been properly discounted."); see also Morgan
v. Commissioner of Social Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999)
("A physician's opinion of disability 'premised to a large extent upon
the claimant's own accounts of his symptoms and limitations' may be

---

[3] (TR 15, 17).

disregarded where those complaints have been 'properly discounted.'")
(<u>citations</u> and <u>quotations</u> <u>omitted</u>); <u>Sandgathe v. Chater</u>, 108 F.3d 978,
980 (9th Cir. 1997) (affirming the ALJ's rejection of a treating
physician's opinion when opinion was based upon the claimant's
exaggerated and unreliable self-reports); <u>Fair v. Bowen</u>, 885 F.2d 597,
605 (9th Cir. 1989) (having discounted plaintiff's credibility, ALJ
properly discredited treating physician's opinion based on plaintiff's
subjective symptoms).

Third, the ALJ noted that, to the extent the June 12, 2007
evaluation found plaintiff incapable of performing mild to moderately
complex work, that finding was contradicted by other medical evidence in
the record.  (TR 15).  For example, the ALJ cited the opinions of two
consultative examining psychiatrists, both of whom conducted objective
psychological testing on plaintiff and both of whom found plaintiff
capable of performing simple to moderately complex work.  (<u>Id.</u> 16; 195-
200, 205-17); <u>see also</u> (157-70) (non-examining state agency physician
finding that plaintiff suffered no severe impairments).  The ALJ also
relied on the testimony of David B. Peterson, M.D., a testifying
psychological medical expert.  Dr. Peterson likewise found that
plaintiff could perform simple and complex work.  (<u>Id.</u> 17, 379).  In
fact, Dr. Peterson testified that the medical evidence in the record did
not support any functional limitations.  (<u>Id.</u> 379).  Because Dr.
Peterson was subjected to cross-examination at the hearing regarding
plaintiff's claim for SSI, the ALJ could legitimately credit and give
greater weight to Dr. Peterson's testimony.  <u>See</u> <u>Andrews</u>, 53 F.3d at
1042.

In short, there was substantial evidence to support the ALJ's

1 decision to reject the findings in the June 12, 2007 Pacific Clinics

2 evaluation.   Accordingly, the ALJ did not commit material error in

3 considering the June 12, 2007 psychiatric evaluation.   Thus, the

4 Commissioner's determination is supported by substantial evidence.

5       B.   <u>Lay Witness Testimony</u> (Issue #2)

6      Plaintiff asserts that the ALJ failed to give proper weight to the

7 statements of Yvette Diaz, a lay witness who submitted a questionnaire

8 in support of plaintiff's application for SSI.[4]   (TR 88-95).   According

9 to plaintiff, Yvette Diaz's statements, when considered properly, show

10 that plaintiff was incapable of performing basic tasks, such as personal

11 grooming and cooking, without assistance.   Plaintiff contends that the

12 ALJ ignored these aspects of Yvette Diaz's statements in order to

13 conclude that plaintiff could perform such basic tasks without problem.

14     "[D]escriptions by friends and family members in a position to

15 observe [plaintiff's] symptoms and daily activities have routinely been

16 treated as competent evidence." <u>Sprague</u>, 812 F.2d at 1232; <u>see also</u>

17 <u>Crane v. Shalala</u>, 76 F.3d 251, 254 (1996).   The ALJ may not discount

18 witness reports solely because they were procured by plaintiff.   <u>Crane</u>,

19 76 F.3d at 254 (citing <u>Ratto v. Secretary, Dept. of Health & Human</u>

20 <u>Servs.</u>, 839 F. Supp. 1415, 1426 (D. Or. 1993)).   Rather, if the ALJ

21 wishes to discount the testimony of a lay witness, the ALJ must give

22 reasons that are germane to that witness.   <u>Crane</u>, 76 F.3d at 254 (citing

23 <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993)).

24     Here, the ALJ committed no error in evaluating Yvette Diaz's

25

26     [4] It appears that the statement that Yvette Diaz submitted

27 in support of plaintiff's SSI application was, at least in part, filled out by plaintiff.   (<u>See</u> TR 93).

28

statements.  First, Yvette Diaz's statements, taken as a whole, show that plaintiff was capable of tending to her own personal needs. Although Yvette Diaz stated that plaintiff needed some assistance with her laundry and cooking, Yvette Diaz also stated that plaintiff had no trouble in caring for her personal needs. (TR 89). In addition, Yvette Diaz stated that plaintiff works, cares for her children, transports her children, cooks for them, clothes them, and gets them ready for bed. (Id. 88-89).  Yvette Diaz also stated that plaintiff shopped two times a week, took public transportation, and did laundry.  (Id. 88-91). Although Yvette Diaz stated that plaintiff had trouble hearing, plaintiff testified that her hearing was perfect. (Id. 348).  Based on this evidence, the ALJ did not commit material error in finding that Yvette Diaz's statements showed that plaintiff's normal activities were "not indicative of disability."  (Id. 17).

Second, the medical evidence in the record contradicted Yvette Diaz's statements regarding plaintiff's ability to understand, follow instructions, remember, and complete tasks.  Indeed, two consultative examiners and one testifying medical expert all concluded that plaintiff's impairments would not prevent her from performing mild to moderately complex tasks. (Id. 16-17); see also (supra).

Third, even if the ALJ had erred in assessing Yvette Diaz's statements, any such error was harmless in light of plaintiff's testimony.  For example, although plaintiff cites Yvette Diaz's statements to show plaintiff is incapable of caring for her own personal needs, plaintiff herself testified that she was her grandfather's paid caretaker just three months before her hearing before the ALJ.  (Id. 302-03).  And before that, she worked as a "bather," a position in which

she spent up to four hours a day bathing senior citizens.  (Id. 304-05).

Plaintiff also testified that she cooks for her children, cleans, and

does all the household chores.  (Id. 318; 361-63).   According to her

testimony, she "do[es] everything."  (Id. 318); see also (id. 97)

(stating that plaintiff takes care of her children without help from

anyone).   This testimony shows that plaintiff is capable of caring for

her personal needs, as well as for the needs of others.   Likewise, the

medical evidence in the record shows that plaintiff was capable of

performing mild to moderately complex tasks.  (See supra).

In short, the ALJ did not commit material error in assessing the

statement of Yvette Diaz.   Thus, the Commissioner's determination is

supported by substantial evidence.

C.   VE Hypothetical (Issue #3)

Plaintiff contends the ALJ erred in failing to pose a complete

hypothetical to the vocational expert ("VE").   Specifically, plaintiff

asserts that the ALJ's hypothetical question did not include any mention

of the impairments and functional limitations set forth in the June 12,

2007 psychiatric evaluation.   As explained below, the ALJ did not err in

relying on the VE's testimony.

The assumptions contained in an ALJ's hypothetical to a VE must be

supported by the record; otherwise, the opinion of the VE that the

plaintiff has residual working capacity has no evidentiary value.

Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993); Embrey v. Bowen,

849 F.2d 418, 422 (9th Cir. 1988).   Hypothetical questions posed to the

VE must set out all of the plaintiff's limitations and restrictions.

Embrey, 849 F.2d at 422.   The hypothetical question must be "accurate,

detailed and supported by the medical record."  Osenbrock v. Apfel, 240

11

F.3d 1157, 1165 (9th Cir. 2001) (citing <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1101 (9th Cir. 1999)).   If limitations based on subjective complaints are not included in a hypothetical, the ALJ must make specific findings explaining the rationale for disbelieving any of the subjective complaints not included.   <u>See</u> <u>Light v. Social Security Administration</u>, 119 F.3d 789, 793 (9th Cir. 1997).

Here, although the ALJ's hypothetical to the VE did not include all the functional limitations set forth in the June 12, 2007 psychiatric evaluation, the ALJ's hypothetical was nevertheless proper.   The Ninth Circuit has made clear that an ALJ's reliance on VE testimony is proper where the hypothetical to the VE "contained all of the limitations that the ALJ found credible and supported by substantial evidence." <u>Bayliss</u> <u>v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005).   As discussed above, the ALJ properly found that the evaluations from Pacific Clinics, which necessarily included the June 12, 2007 evaluation, were not entitled to substantial weight because those evaluations were based on plaintiff's discredited self-reporting and because they conflicted with other competent medical evidence in the record.   (TR 17; <u>see</u> <u>also</u> <u>supra</u>). Consequently, the ALJ was not obligated to include the functional limitations set forth in the June 12, 2007 evaluation when posing a hypothetical to the VE.

Accordingly, the ALJ did not commit material error in relying on the VE's response to the hypothetical questions that were posed at the

///

///

///

///

12

1   hearing.   Thus,   the   Commissioner's   determination   is   supported   by

2   substantial evidence.

3

4                              CONCLUSION

5      After   careful   consideration   of   the   record   as   a   whole,   the

6   magistrate judge concludes that the Commissioner's decision is supported

7   by   substantial   evidence   and   is   free   from   material   legal   error.

8   Accordingly,   it   is   ordered   that   judgment   be   entered   in   favor   of   the

9   Commissioner.

10

11   DATED: July 29, 2008

12

13   CAROLYN TURCHIN
     UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                          13

**SOCIAL SECURITY ADMINISTRATION**
Office of Disability Adjudication and Review

**11**

DECISION

**IN THE CASE OF**

Elizabeth E Diaz
(Claimant)

(Wage Earner)

**CLAIM FOR**

Supplemental Security Income

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
(Social Security Number)

## JURISDICTION AND PROCEDURAL HISTORY

On August 23, 2005, the claimant filed an application for Supplemental Security Income , alleging disability beginning January 12, 2002. The claim was denied initially on December 14, 2005. Thereafter, the claimant filed an untimely written request for hearing on February 27, 2006 (20 CFR 416.1429 *et seq.*). Good cause has been established for the late filing.

The claimant appeared and testified at a hearing held on May 2, 2007, in Pasadena, CA. The hearing was continued so that additional medical records could be obtained. The claimant appeared and testified at a hearing held on October 1, 2007, in Pasadena, CA. Also appearing and testifying were David B. Peterson, Ph.D., an impartial psychological medical expert, and Rheta B. King, an impartial vocational expert. The claimant is represented by Daniel Keenan, an attorney.

## ISSUES

The issue is whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Although Supplemental Security Income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), I have considered the complete medical history consistent with 20 CFR 416.912(d).

After careful consideration of all the evidence, I conclude the claimant has not been under a disability within the meaning of the Social Security Act since August 23, 2005, the date the application was filed.


EXHIBIT

Elizabeth E Diaz (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)                                                    Page 2 of 2        **12**

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).



Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965).  If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.  Because the claimant is found not disabled at this step, I do not proceed to the next step.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

**1.   The claimant has not engaged in substantial gainful activity since August 23, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).**

**2.   The claimant has the following severe impairment: depression (20 CFR 416.920(c)).**

I reviewed evidence regarding the claimant's physical impairments.  In October 2005 an audiometric evaluation revealed a profound hearing loss in the right ear and moderately severe hearing loss in the left ear (Exhibit 2F).  The claimant was noted to need hearing aids.  A CT of the neck was negative in October 2005 (Exhibit 6F/5).  The claimant weighed 168 pounds and stood 64 inches in March 2006 (Exhibit 7F/6).  March 2006 x-rays of the thoracic spine showed very minimal scoliosis (Exhibit 7F/5).  March 2006 x-rays of the lumbar spine were normal (Exhibit 7F/4).  March 2006 x-rays of the cervical spine were normal (Exhibit 7F/3).

At the hearing the claimant testified to the following.  The claimant claims that she has no physical impairments and no physical limitations.  She testified that she can lift 50 pounds. She heard perfectly at the hearing.  Her verbal responses at the hearing demonstrated her ability to hear well.  She testified that her only problem limiting her ability to work is depression.  I find that the claimant has no physical impairment.

I give the claimant the benefit of the doubt and find that her depression is severe.  With respect to the Psychiatric Review Technique Form, the claimant has a mild limitation in activities of daily living, a mild limitation in social functioning, a moderate limitation in maintaining concentration, persistence, or pace, and no episodes of decompensation.

I find that drug and alcohol abuse is not material in light of the claimant's testimony.  Aside from a positive drug test given at her emergency room visit when she had suicidal ideation, there has not been any other positive drug test.



**3.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

This finding is based on the testimony of the medical expert, Dr. Peterson.

**4.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform mild to moderately complex work.**

This finding is generally based on the testimony of Dr. Peterson.

In making this finding, I considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p. I also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, I must follow a two step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 416.929(c) describes the kinds of evidence, including the factors below, that I must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;



5. Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms (SSR 96-7p).

At the hearing the claimant testified to the following. The claimant claims that she received family therapy and treatment for depression at Foothill Family Service. She was prescribed medications such as Paxil by her family doctor, who did not refer her to other treatment. She finds it hard to cope and deal with daily life. As for her activities of daily living, she makes sure her daughter is dressed, fed, and groomed for school. The claimant walks her daughter to a school across the street. The claimant makes dinner. She stated that her psychological medications make her feel heavy and groggy. She testified that she has nightmares.

After considering the evidence of record, I find that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

The objective medical findings generally do not substantiate the extent of the claimant's allegations. The claimant was noted in August 2005 to feel anxiety secondary to a thyroid mass and was prescribed Xanax as necessary (Exhibit 1F/2). In March 2006 the claimant was prescribed Paxil (Exhibit 7F/6).

The claimant went to the emergency room because she was feeling depressed and had suicidal thoughts in April 2007 (Exhibit 12F/11). A toxicology screen was positive for methamphetamine and benzodiazepine (Exhibit 12F/10). She was diagnosed with depression with drug abuse. A social worker approved the claimant's discharge from the emergency room.

The claimant was initially assessed by Pacific Clinics in April 2007 (Exhibit 8F/7-11). The claimant reported that she lived with a 17-year-old son and 7-year-old daughter. The claimant reported that she took care of her grandfather as a state nurse's aide. The claimant was diagnosed with severe major depressive disorder and assigned a Global Assessment of Functioning of 45. Another Pacific Clinics evaluator assigned the claimant a Global Assessment of Functioning of 40 in April 2007 (Exhibit 8F/4-5).

The claimant was noted in June 2007 to be receiving mental health services from Dr. Cruz at Pacific Clinics (Exhibit 14F/8). The claimant alleged poor sleep and feeling stressed out in June 2007 (Exhibit 11F/2). Despite the low Global Assessment of Functioning scores given by Pacific Clinics, the claimant appears to be functionally capable of taking care of her children. Thus, the overall evidence shows that the claimant is not as limited by her depression as she claims.



As for the opinion evidence, Harrell Reznick, Ph.D., a psychological consultative examiner, examined the claimant in November 2005 (Exhibit 4F). Dr. Reznick noted that the claimant gave a suboptimal effort throughout the evaluation, resulting in test performances that seemed to underestimate her actual levels of functioning. The claimant's verbal IQ was 64, performance IQ was 62, and full scale IQ was 60 (Exhibit 4F/5). These scores were in the mildly mentally retarded range. However, the claimant displayed at least average language facility for the general population, including intact verbal comprehension and the ability to carry on a normal conversation with Dr. Reznick (Exhibit 4F/6). These actual abilities suggest significantly higher intellectual functioning than the IQ scores suggest. Dr. Reznick did not give any diagnosis for Axis I or II. Dr. Reznick opined that the claimant could perform at least simple to moderately complex work.

Dr. Reznick examined the claimant again in May 2007 (Exhibit 10F). Dr. Reznick noted that the claimant's effort was suboptimal (Exhibit 10F/1). The claimant's report of her history was inconsistent with her report in November 2005 with Dr. Reznick (Exhibit 10F/1-2). Dr. Reznick noted that the claimant reported that she could perform basic household chores unassisted (Exhibit 10F/5). The claimant appeared with a mildly depressed mood and mildly blunted affect with no evidence of a thought disturbance (Exhibit 10F/6). The claimant was diagnosed with a depressive disorder not otherwise specified, by history (Exhibit 10F/8). Dr. Reznick opined that the claimant could perform at least simple to moderately complex work (Exhibit 10F/9).

Y. McDowell, M.D., a State Agency psychiatrist, reviewed the evidence and opined in December 2005 that the claimant did not have a severe mental impairment (Exhibit 5F).

Lisa Morales, M.D., stated in December 2005 that the claimant was disabled from December 27, 2005 to August 2006 because of depression and anxiety, and was not permanently disabled (Exhibit 6F/3).

Edward Ritvo, M.D., a psychiatric consultative examiner, examined the claimant in May 2007 (Exhibit 9F). Dr. Ritvo observed the claimant to be pleasant and cheerful throughout the evaluation (Exhibit 9F/4). Dr. Ritvo stated that the claimant had at least average intelligence. Dr. Ritvo diagnosed the claimant with a mood disorder not otherwise specified and assigned the claimant a Global Assessment of Functioning of 60 (Exhibit 9F/5). Dr. Ritvo stated that the claimant could perform simple and complex commands.

Dr. Peterson testified at the hearing that the claimant had a math learning disorder, a depressive disorder not otherwise specified, malingering, and a substance abuse history. He stated that the claimant told different stories to different people at different times. He stated that the claimant's first mental health treatment was in April 2007 at Pacific Clinics. He stated that the claimant has not had mental health treatment for 12 months. Dr. Peterson testified that the claimant's inconsistencies were problematic. He testified that the claimant's impairments do not meet or equal any listing.

Dr. Peterson stated that the claimant had family counseling in 2004 at Foothill Family Service, but there was no indication that the claimant had treatment by a psychiatrist or psychologist



there. He noted that the claimant denied any substance abuse. Dr. Peterson noted that the claimant denied any side effects of medications (Exhibit 15F/4), which was inconsistent with the claimant's testimony at the hearing. He further noted that there was compelling medical evidence of malingering: clinical observation from the consultative examiner, historical inaccuracies in the claimant's histories, Rey 15 and TOMM scores (Exhibit 10F/7) that were significantly below levels of chance for presenting memory difficulties that did not exist, and low IQ scores, which suggest mild mental retardation but were contradicted by the claimant's presentation at the hearing.

Dr. Peterson remarked that the claimant was verbally articulate at the hearing. He stated that Pacific Clinics relied on the claimant's self-reports, did not do independent objective psychological testing, and did not test the claimant's veracity. Dr. Peterson stated that the claimant's reports of dreams of serious past abuse (Exhibit 15F/1) were not readily believable given the objective evidence of malingering. Thus, he gave less weight to the evaluation of Pacific Clinics. Dr. Peterson did not impose any mental limitations and opined that the claimant could do simple and complex work.

All medical opinions in the record generally agree that the claimant can perform mild to moderately complex work. Dr. Morales did not support her opinion with objective medical evidence. Furthermore, Dr. Morales did not state that the claimant's impairment imposed limitations for 12 months. I give the most weight to Dr. Peterson's opinion because he carefully explained his opinion with various references to the record. He also observed the claimant at the hearing. I find Dr. Peterson's opinion to be most consistent with the overall record and adopt it.

Yvette Diaz submitted a third party statement (Exhibit 4E). The report showed that the claimant worked, took care of her son and daughter, had no problems with personal care, prepared complete meals daily, did cleaning and laundry, and used public transportation. These fairly normal activities of daily living are not indicative of disability.

I find that the claimant's credibility is poor based on a careful review of the evidence and generally find the reasoning of Dr. Peterson to be valid.

**5. The claimant is capable of performing past relevant work as a home attendant and general clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).**

The vocational expert testified at the hearing that the claimant has past relevant work as a home attendant (DOT 354.377-014, SVP 3, semi-skilled, medium work) and a general clerk (DOT 209.562-010, generally performed as SVP 3, semi-skilled, light work and actually performed as SVP 2, unskilled work). The vocational expert testified that a hypothetical claimant with the claimant's residual functional capacity is able to perform all of the claimant's past relevant work.

**6. The claimant has not been under a disability, as defined in the Social Security Act, since August 23, 2005 (20 CFR 416.920(f)), the date the application was filed.**



Elizabeth E Diaz (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)                              Page 8 of 8

**18**

## <u>DECISION</u>

Based on the application for Supplemental Security Income filed on August 23, 2005, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

_____
Joel B. Martinez
Administrative Law Judge

NOV 1 1 2007
_____
Date

EXHibIT